IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD PYLES, JR., | ) | CASE NO. 4:16CV3017 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN HOCKING CORRECTIONAL | ) | |
| FACILITY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Ronald Pyles, Jr. ("Petitioner" or "Pyles") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Pyles is detained at the Southeastern Correctional

Institution, Hocking Unit, having been found guilty by the Mahoning County, Ohio, Court of

Common Pleas, following a bench trial, of one count of gross sexual imposition and one count of

rape.  *State v. Pyles*, Case No. 12 CR 570 (Mahoning Cty. Common Pleas Ct., filed January 10,

2014).  At sentencing, the trial court sentenced Pyles to three years on the gross sexual

imposition count and ten years on the rape count, to be served concurrently, for a total of ten

years in prison.  Doc. 5-1, p. 55.

On December 6, 2016, Pyles filed his Petition for Writ of Habeas Corpus setting forth

four grounds for relief.  Doc. 1, pp. 6-11.  On July 14, 2017, Pyles filed a Motion to Expand the

Record.  Doc. 8.  This matter has been referred to the undersigned Magistrate Judge for a Report

and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, a portion of

Ground 1 is not cognizable and the remainder fails on the merits; a portion of Ground 2 is

procedurally defaulted and the remainder fails on the merits; Ground 3 is withdrawn; and Ground

4 fails on the merits.  Thus, the undersigned recommends that Pyles's Petition for Writ of Habeas

Corpus (Doc. 1) be **DISMISSED in part** and **DENIED in part**.[1]  Additionally, Pyles's Motion to Expand the Record (Doc. 8) is **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Mahoning County Court of Appeals, Seventh Appellate District of Ohio:[2]

> {¶ 3} Since 1994, Pyles was the pastor at Victory Harvest Ministries, a church he founded in North Jackson. From October 2010 to February 2011, O.H., a developmentally disabled young woman, came to live at a homeless shelter attached to the church. At the time O.H. moved into the church she was 19 years old. Subsequently, she disclosed to a teacher, and then to Mahoning County Board of Developmental Disabilities authorities and to police that Pyles had sexually abused her.

> *       *       *

> {¶ 11} At the beginning of the [bench] trial, an interview of the victim was conducted by the trial court to determine her competency to testify. The prosecutor and the trial court questioned the victim, but defense counsel declined to ask any questions and did not object to any inquiries made.

> {¶ 12} The following evidence was adduced at trial. O.H. testified she met Pyles when she was 7 years old, when he was the pastor at Victory Harvest Ministries. O.H. went to Victory Harvest with her father, although she was living with her mother at the time. O.H. lived with her mother until she was 14; she then moved in with her grandfather.

---

[1]  The grounds in the petition that are procedurally defaulted, not cognizable and withdrawn result in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

[2]  Pyles has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

After her grandfather passed away, when O.H. was 18 years old, she moved in with Jason and Sarah LeMasters, fellow parishioners, and lived there for about 18 months.

{¶ 13} In October 2010, O.H. moved into the Victory Harvest Ministries complex; she was 19 years old at the time. The church building had several rooms and O.H. lived on the second floor near the gym area. Pyles and his wife, along with several others lived at the church. Pyles lived in his own room off the church's sanctuary; he did not share a bedroom with his wife.

{¶ 14} O.H. testified that when she lived at Victory Harvest, Pyles began to abuse her. The sexual abuse would only occur in Pyles' room, which he occupied alone. O.H. explained that Pyles would ask her to come into his room after everyone else fell asleep. O.H. could not remember the exact dates when this occurred. O.H. stated that she did not want Pyles to touch her, and that Pyles told O.H. more than once not to tell anyone. Pyles told her that she would have to move out of the church if anyone found out what happened.

{¶ 15} O.H. testified that Pyles touched her vagina with his hand. She agreed that he touched her more than once. O.H. also said that Pyles stuck his fingers inside of her vagina. Pyles also put his mouth on her vagina. O.H. agreed that this happened more than twice but could not remember how many times. She said Pyles touched O.H.'s bare breasts with his hands. She also testified that Pyles would make her touch his penis, which she described as "soft" and "mushy." O.H. stated that Pyles never inserted his penis into her mouth, vagina, or anus.

{¶ 16} Although O.H. was 20 years old, she attended special education classes at Mahoning County Career and Technical Center in Canfield. In early 2011, O.H. began to disclose to Mary Beth White, her special education teacher at MCCTC, what Pyles did to her. Initially, O.H. disclosed she had a "bad secret" with Pyles, but eventually gave more detail, which was consistent with her trial testimony.

{¶ 17} In February 2011, O.H. was removed from the church. In the days following her removal, O.H. communicated with Pyles through her cell phone.

{¶ 18} While still on direct examination, O.H. was questioned about the fact that during a prior civil protection order hearing involving Pyles she testified that nothing happened between her and Pyles. She explained that Pyles told her to say that and to explain that Pyles was merely counseling her about her masturbation problem.

{¶ 19} On cross-examination, defense counsel marked the April 2011 CPO hearing transcript as an exhibit, but did not introduce it as evidence. He questioned O.H. about it extensively in an attempt to impeach her credibility. O.H. conceded that she had promised to tell the truth during that hearing and that she had stated that her relationship with Pyles was nonsexual. She agreed that she said that Pyles was counseling her about her chronic masturbation problem and that was the "bad secret" she had disclosed to her teacher. At several points, O.H. appeared confused by defense counsel's questions and hesitated to admit that she had lied at the CPO hearing.

{¶ 20} For example:

> Q: The question I asked you on April 20th, when I asked you the question, Did you and Pastor engage in any sexual relations, and you said no, was that the truth or was that a lie?
>
> A: Mmm, true.
>
> Q. You said the truth?
>
> A. I did.

{¶ 21} On redirect, however, O.H. confirmed that Pyles told her to say that nothing had happened between them and that he was counseling her for her masturbation issue. She agreed some of defense counsel's questions were confusing. She admitted she had lied at the CPO hearing because Pyles told her to do so. She reaffirmed that Pyles did in fact sexually abuse her.

{¶ 22} Dorothy Morton is O.H.'s legal guardian. Morton is employed with Help Hotline Crisis Center, which provides guardianships for those incapable of caring for themselves. Morton is responsible for taking care of O.H., and making sure that her needs are met. Morton became the legal guardian of O.H. in February 2011 after she left the church, because O.H. was "unable to take care of herself or protect herself."

{¶ 23} Morton works with the Mahoning County Board of Developmental Disabilities through her guardianships, and works with individuals suffering from mental illnesses who require the Board's services. Anna Robinson (with whom O.H. went to reside after she left the church) and Patti Amendolea are also part of the team that cares for O.H.

{¶ 24} In April 2011, Morton sought a civil protection order on behalf of O.H. after someone from the church came to Robinson's house and spoke to O.H. At the hearing, Morton stated that O.H. "was scared and visibly upset," and it did not surprise her that O.H. failed to disclose the abuse during that hearing. Morton has not talked to O.H. about what happened between Defendant and O.H. O.H. was later put in counseling.

{¶ 25} Patti Amendolea testified that she was employed with Mahoning County Board of Developmental Disabilities as a services support administrator (SSA) assigned to O.H. from March or April 2011 until March 2012. Amendolea was chosen as the SSA because she had a background working with sexual abuse victims and O.H. had begun to disclose the abuse during that time. Amendolea was responsible for managing many aspects of O.H.'s care, most notably her medical needs, including mental health needs.

{¶ 26} Pursuant to her treatment plan, Amendolea performed a forensic interview on March 12, 2012. She was trained to ask very simple, non-suggestive questions, so as not to be unduly suggestive or confuse the victim. It took O.H. a year to disclose the abuse. Amendolea explained that due to O.H.'s developmental disabilities, she is "slow to

process information." She said the purpose of the interview was to allow O.H. to get the medical and mental health services she needed.

{¶ 27} Over objections by the defense, Amendolea testified that O.H. disclosed to her that Pyles digitally penetrated her and performed oral sex on her; and the acts were nonconsensual. On several occasions, Pyles forcefully "grabbed her hand and forced it on his penis to stroke it." O.H. stated that these acts occurred in Pyles['] bedroom, but she could not remember the specific dates of when they occurred. Further, she opined O.H. was unable to resist due to her mental disabilities.

{¶ 28} On cross-examination, Amendolea admitted that Robinson had expressed concerns to her about O.H. masturbating in inappropriate areas of the home.

{¶ 29} Larry Lapidus, a licensed therapist with Compass Family and Community Services, who has a Master's degree in counseling, began treating O.H. in March 2011 to alleviate her depression. O.H. suffered from being torn away from living at the church; she considered the church people the only family she had left. He said O.H. trusted Pyles "because she has compromised intellect and she looked to the Pastor for guidance and for support." Lapidus conceded that O.H. did not disclose any abuse to him during the counseling. He opined that O.H. was not ready to discuss the incidents with Pyles at that time. ("When we discussed the incident, she became stressed out, and—and I could tell that she was not ready to talk about it. So because my goal was to alleviate depression, I wanted to work with what she was giving me.") Lapidus felt it would not have been therapeutic to press O.H. for information.

{¶ 30} Lapidus stated that O.H., who was 19 at the time, had a full scale IQ of 58. He explained that O.H. was functioning at a second- or third-grade level, and required to have a legal guardian; meaning she was not competent to sign papers or to make decisions for herself. Lapidus diagnosed O.H. with depressive disorder and mild mental retardation. O.H.'s diagnoses affected her ability to say "no" to persons she trusted. O.H.'s mental retardation affected her judgment in making decisions, and could easily be persuaded.

{¶ 31} On cross-examination, Lapidus affirmed that O.H. told him that "she was never hurt [by Pyles]."

{¶ 32} Tony Rinaldi, an investigative agent with Mahoning County Board of Developmental Disabilities, testified he is responsible for investigating cases of abuse and neglect against individuals with disabilities. Rinaldi was assigned to investigate an incident involving O.H. in February 2011.

{¶ 33} O.H. went with MCBDD personnel to look at new living arrangements but was unsatisfied with the first option they looked at. Rinaldi called Pyles to inform him they would be bringing O.H. back to the church that night and Pyles volunteered he was counseling O.H. "on the sexual issue of masturbation, that she had an issue with masturbation." A few days later, Rinaldi called Pyles to inform him that O.H. was being moved out of the church to live with Anna Robinson. He said Pyles, without provocation,

offered that nothing happened between himself and O.H. because he is impotent. Rinaldi advised Pyles that nobody had made any accusations against him at that time.

{¶ 34} On cross-examination, Rinaldi said he was unsure whether Pyles knew about the "bad secret" statement O.H. had made to her teacher when Pyles made those remarks to him.

{¶ 35} In February 2011, North Jackson Detective Brian Newhard was assigned to investigate the allegations between O.H. and Pyles. At that time, O.H., however, would not say what happened. In March 2012, Newhart was contacted by Tony Rinaldi concerning the allegations between O.H. and Pyles. Newhart received an interview with Amendolea and O.H., in which O.H. discussed the sexual abuse that occurred.

{¶ 36} Newhart then made contact with and interviewed O.H. at Robinson's house on Judson. O.H. discussed the sexual abuse, which was consistent with her interview with Amendolea. Newhart also reviewed a statement from Robinson concerning what O.H. discussed with her concerning the sexual abuse. Newhart described O.H. as "frightened, scared, and traumatized" during the interview. Newhart attempted to speak with the members of Pyles' church, but no one would agree to talk to him.

{¶ 37} At the conclusion of the State's case, Pyles made a Crim.R. 29 motion, which was denied by the trial court.

{¶ 38} The defense called three witnesses. Amanda Buck testified that she was O.H.'s friend for about six years, and met her at Victory Harvest Ministries through the youth group when she was 16 and the victim was 17. Buck described O.H. as "very friendly, sometimes overly friendly, [O.H. would] like push herself into situations where, obviously, it was kind of awkward for everyone involved. Like with guys, there would be, you know, talking in a group and she'd push herself into the group and want to be close to them, * * *." Buck also described O.H. as exaggerating a story when relaying it. Buck and O.H. had regular sleepovers. Buck stated that she stopped the sleepovers after she discovered O.H. masturbating during one of them.

{¶ 39} Pyles' wife Karen also testified that O.H. was inappropriately clingy towards men. She characterized O.H. as manipulative, with a temper. She said O.H. looked up to Pyles as a father figure and to her as a mother figure.

{¶ 40} On cross-examination, Karen conceded that during a guardianship hearing (where she was trying to retain custody of O.H.), she never described O.H. as manipulative and never described her as having issues with men. In fact, she had described O.H. as a "good girl." She agreed she loves her husband and did not believe he did anything wrong.

{¶ 41} Pyles testified in his own defense, and denied raping or improperly touching O.H. He also denied allegations that O.H. had touched his penis. He testified that he was in fact impotent. Pyles went into extensive testimony about his background as a licensed minister. He explained that he had experience counseling people with addictions. He maintained he was counseling O.H. about her obsessive masturbation problem. He denied

any improper conduct with O.H., explaining "[s]he was just like a child to us." He said that O.H. had knowledge about the layout of his bedroom because she had cleaned it before while he was away. He denied being alone with her in his bedroom, but said she would regularly come to watch television in the pastor's lounge.

{¶ 42} During cross-examination, Pyles admitted knowing that O.H. was "mentally disabled." Despite his assertions that he was counseling O.H. (and others regarding various addictions), Pyles admitted he only had a ninth grade education. Pyles also admitted that O.H. was not a liar. He was unable to explain the fact that O.H.'s description of his penis was consistent with his impotence.

{¶ 43} At the conclusion of all testimony, Pyles renewed his Crim.R. 29 motion, which was denied by the trial court. Defense counsel then moved to strike Amendolea's testimony (which he had objected to) about her interview of O.H., as hearsay. This was overruled by the trial court.

{¶ 44} Following closing arguments, the trial court also brought up the fact that defense counsel had marked as an exhibit the transcript of the CPO hearing but had failed to introduce it as evidence. Defense counsel belatedly moved to admit the exhibit, which the trial court denied due to the untimeliness and because it was used for impeachment purposes and would not come in as substantive evidence.

{¶ 45} After considering all of the evidence, the trial court found Pyles guilty of two of the four charges: one count of rape and one count of gross sexual imposition. The trial court acquitted Pyles on the remaining counts of rape and gross sexual imposition

*State v. Pyles*, 2015 WL 9693891, at ** 1-6 (Ohio Ct. App. Dec. 30, 2015).

### 2. Procedural History

On May 31, 2012, a Mahoning County Grand Jury issued a secret indictment charging Pyles with two counts of gross sexual imposition, R.C. 2907.05(A)(5) (Counts 1 and 2), and two counts of Rape, R.C. 2907.02(A)(1)(c) (Counts 3 and 4).  Doc. 5-1, pp. 5-6.  Pyles, through counsel, pleaded not guilty to the charges.  Doc. 5-1, p. 9.  On December 28, 2012, the state filed a bill of particulars/motion to amend indictment, correcting the date of offense from October 1, 2011, to October 1, 2010.  Doc. 5-1, pp. 10, 13.

Pyles moved to inspect the grand jury proceedings.  Doc. 5-1, p. 15.  At a pretrial conference on June 26, 2012, the trial court gave the state thirty days to respond to three pending motions that Pyles had filed.  Doc. 5-1, p. 33.  A speedy trial waiver was not executed but the

court ruled that the pending motions tolled the speedy trial time.  Doc. 5-1, p. 33.  At a pretrial conference on August 6, the trial court discussed Pyles's motion for the grand jury transcripts, ordered the state to respond, and the state and defense jointly moved to continue the trial date. Doc. 5-1, p. 34.  The trial court noted that the speedy trial time was again tolled.  Doc. 5-1, p. 34. On August 28, the trial court ordered the state to advise Pyles's counsel whether the victim or the victim's guardian testified at the grand jury proceeding and to provide the grand jury testimony to the court, if either party did testify.  Doc. 5-1, p. 40.

On November 29, 2012, Pyles moved to dismiss the case based on a violation of his speedy trial rights.  Doc. 5-1, p. 41.  The trial court overruled Pyles's motion.  Doc. 5-1, p. 51.

On January 7, 2013, Pyles waived his right to a jury trial and elected to have his case tried to the court.  Doc. 5-1, p. 52.  During trial, Pyles moved twice for acquittal under Criminal Rule 29, which the court overruled.  Doc. 5-1, p. 53.  Upon the completion of trial, the court found Pyles guilty of one count of gross sexual imposition and one count of rape, and found insufficient evidence to find Pyles guilty of the remaining charges.  Doc. 5-1, pp. 53-54.

On January 23, 2013, the trial court sentenced Pyles to three years on the gross sexual imposition count and ten years for rape, to be served concurrently, for an aggregate sentence of ten years in prison.  Doc. 5-1, pp. 55-56.

**B. Direct Appeal**

Pyles, through new counsel, timely appealed to the Ohio Court of Appeals.  Doc. 5-1, p. 57.  In his brief, he raised the following assignments of error:

1. Defendant-appellant was denied his right to a speedy trial in violation of the Ohio speedy trial statute, the Ohio Constitution, Section 10, Article I, and the Sixth Amendment to the United States Constitution.

2. The guilty verdict was based on insufficient evidence and was clearly against the manifest weight of the evidence.

3. The trial court's evidentiary decisions denied Defendant-Appellant a fair trial warranting a reversal of the verdict of guilty.

4. The cumulative effect of the evidentiary errors occurring during the proceedings resulted in a fundamentally unfair trial.

5. Defendant-appellant was denied his constitutional guarantee of effective assistance of counsel.

Doc. 5-1, p. 66.  On December 30, 2015, the Ohio Court of Appeals affirmed the trial court's

judgment.  Doc. 5-1, p. 153.

On February 16, 2016, Pyles, pro se, appealed to the Ohio Supreme Court.  Doc. 5-1, p.

154.  In his memorandum in support of jurisdiction, he raised the following propositions of law:

I. A defendant is denied right to speedy trial in violation of the U.S. Constitution, the Ohio Constitution, Art. I, Sec. 10, and Ohio speedy trial statute when the trial court provides no trial date.

II. A guilty verdict based on insufficient evidence and clearly against the manifest weight of the evidence is a due process violation.

III. The trial court's errors in evidentiary decisions resulted in a cumulative effect that denied a fair trial.

IV. Appellant was denied his Sixth Amendment Constitutional guarantee of effective assistance of counsel.

Doc. 5-1, p. 157.  On April 20, 2016, the Ohio Supreme Court declined jurisdiction pursuant to

S.Ct.Prac.R. 7.08(B)(4).  Doc. 5-1, p. 219.

**C. Application to Reopen Appeal pursuant to Rule 26(B)**

On February 29, 2016, while his appeal was pending in the Ohio Supreme Court, Pyles.

pro se, filed an Application to Reopen Appeal pursuant to Ohio App. R. 26(B) with the Ohio

Court of Appeals.  Doc. 5-1, p. 220.  He alleged that he received ineffective assistance of

appellate counsel when appellate counsel failed to set forth the following assignments of error:

1. Defendant's due process rights were violated by the vindictive actions of the court that filed felony charges against the defendant based upon the same action defendant was appealing.

2. Defendant's due process rights were violated when the trial court used a bench trial as a guise for a vindictive process of imposing a plea bargain upon the defendant.

3. Lack of a trial date entered in the journal is prima facie evidence of intent to violate constitutional right to speedy trial.

Doc. 5-1, pp. 221-226. On May 4, 2016, the state Court of Appeals issued an opinion denying

Pyles's Application to Reopen. Doc. 5-1, pp. 233-238. Pyles moved for reconsideration but the

Ohio Court of Appeals denied his motion. Doc. 5-1, pp. 239, 246.

On June 8, 2016, Pyles appealed to the Ohio Supreme Court. Doc. 5-1, p. 247. In his

memorandum in support of jurisdiction, he raised the following propositions of law:

I. Defendant's due process rights were violated by the vindictive actions of the court when they filed felony charges against the defendant based on the same action defendant was appealing in another case—which was subsequently reversed.

II. Defendant's due process rights were violated by a sham trial court using a bench trial as a guise for a vindictive process to allow the court to effectively impose a plea bargain.

III. Lack of a trial date entered in the journal is prima facie evidence of intent to violate constitutional right to speedy trial.

Doc. 5-1, p. 250. On July 27, 2016, the Ohio Supreme Court declined to accept jurisdiction of

the appeal pursuant to S.C.Prac.R. 7.08(B)(4). Doc. 5-1, p. 279.

**E. Federal Habeas Petition**

On December 6, 2016, Pyles, pro se, filed his Petition for a Writ of Habeas Corpus. Doc.

1. He listed the following grounds for relief:

<u>**Ground One**</u>: Petitioner was denied his right to a speedy trial in violation of the Ohio Speedy Trial statute, and the Sixth Amendment to the United States Constitution.

**Supporting facts**: Ohio Revised Code 2945.71 provides that the time within which a trial must be held, and states that a person accused of a felony "[s]hall be brought to trial within two hundred seventy days after["] arrest, or within ninety days if the "accused is held in lieu of bail on the pending charge." In the case at bar, Petitioner's right to a speedy trial was violated as set forth in the above statute and R.C. 2945.71(C)(2) and (E). R.C. 2945.72(H). There is but one remedy under the rulings of the Supreme Court under **BARKER vs. WINGO** (1972) 407 U.S. 514, that the nature of the

10

right to a speedy trial leads to the remedy of the dismissal of the indictment when the Petitioner has been deprived of that right. The ruling of the Trial Court and the unreasoned opinion of the appellate court demand the relief Petitioner requests.

**Ground Two**: The evidence submitted at trial failed to prove all elements of the offenses. The evidence was insufficient and the court erred in denying the Petitioner's motion for Crim. R. 29 Acquittal. The unreasoned opinion of the appellate court affirming the convictions denied the Petitioner his constitutional rights.

   **Supporting facts**: Petitioner was charged with violating two statutes of the O.R.C. 2907.02(A)(1)(C) and R. C. 2907.05(A)(5). The [g]ist of the evidence against the Petitioner was that he committed Rape w/a person who was unable to consent or resist due to substantial impairment because of a mental condition. The state did not prove all elements of the crimes for which Petitioner was charged and no evidence was produced sufficient to convict Petitioner beyond a reasonable doubt. The opinion of the Trial Court and the Appellate Court are inconsistent with the evidence produced at trial to find the Petitioner guilty of the charged crimes. Evidence does exist that the accuser was not so limited in her ability to reason out her actions and her testimony at a previous hearing is directly the polar opposite of the coerced and well crafted descriptions and answers from trial.

**Ground Three**: The trial court and ultimately the appellate court denied the Petitioner his rights to due process by its evidentiary decisions which in the cumulative denied the Petitioner a right to a fair trial.

   **Supporting facts**: Multiple evidentiary decisions by the trial court denied the Petitioner his right to a fair trial. An abuse of discretion regarding the trial court['] s failure to make preliminary findings on the victim['] s competency. The trial court's failure to strike the testimony of Patti Amendola as it was not elicited to provide a medical diagnosis or element of the alleged crimes. The court admitted evidence that was an opinion based on what was told to them not on medical evidence. The Court erred to the prejudice of the Petitioner in not admitting the transcript of previous testimony by the alleged victim.

**Ground Four**: Petitioner was denied his constitutional guarantee of effective assistance of counsel under the Sixth Amendment.

   **Supporting facts**: Petitioner asserts that Counsel made egregious errors that rise to the level of ineffective assistance of counsel. Petitioner has established both prejudice and a reasonable probability that the outcome of the case would have been different if not for counsel['] s blunders. Trial Counsel offered no evidence nor sought preliminary rulings on the alleged victim's competency. There was no forensic psychiatric evaluation performed by actual Doctors with degrees as to her competency or level of understanding. Counsel offered no legal assistance when he agreed to waive a jury trial in front of a Judge that had demonstrated previous bias toward the Defendant. Counsel failed to voir-dire any of the witness[e]s who were called to testify for the alleged victim

as so called "experts[.]" Defendant did not receive a fair trial and the affirmation by the
Appellate Court is an unreasoned opinion that must be reversed.

Doc. 1, pp. 6-11.  On May 12, 2017, Respondent filed a Return of Writ (Doc. 5).  Pyles filed a

Traverse on July 11, 2017 (Doc. 7) and a Motion to Expand the Record (Doc. 8), to which

Respondent filed a reply (Doc. 9).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

petitioner must meet certain procedural requirements in order to have his claims reviewed in

federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).

"Procedural barriers, such as statutes of limitations and rules concerning procedural default and

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."

*Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes

confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v.*

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are

"still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural

default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner

has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state

defendant with federal constitutional claims must fairly present those claims to the state courts

before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v.*

*Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see*

*also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d

873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a

habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

    **Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Pyles sets forth four grounds for relief in his Petition.  Doc. 1, pp. 6-11.  The undersigned recommends the Court find that a portion of Ground 1 is not cognizable and the remainder fails on the merits; a portion of Ground 2 is procedurally defaulted and the remainder fails on the merits; Ground 3 is withdrawn; and Ground 4 fails on the merits.

## A. A portion of Ground 1 is not cognizable and the remainder fails on the merits

In Ground 1, Pyles argues that he was denied his right to a speedy trial under Ohio law and in violation of the Sixth Amendment.  Doc. 1, p. 6.  To the extent that Pyles alleges a violation of Ohio's speedy trial statute, he fails to raise a cognizable claim for federal habeas relief, as he concedes in his Traverse (Doc. 7, p. 30).  *See Estelle v. McGuire*, 502 U.S. 62, 67-68(1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

To the extent that Pyles alleges a violation of the Sixth Amendment right to a speedy trial, his claim fails on the merits.  The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial."  U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515-516 (1972).  In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right.  *Id*. at 523.  Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Id*. at 530; *see also United States v. Marion*, 404 U.S. 307, 320-21 (1971).  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

In Ohio, courts consider the state speedy trial provisions found in R.C. § 2945.71 *et seq*., which Ohio courts consider coextensive with the Sixth Amendment speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011) (citing *State v. O'Brien*, 516 N.E.2d 218, 220 (Ohio 1987) and *State v. Pachay*, 416 N.E.2d 589, 591 (Ohio 1980)).  R.C. § 2945.71(C)(2) provides, "[a] person against whom a charge of felony is pending . . . shall be brought to trial

16

within two hundred seventy days after the person's arrest."  "For purposes of computing time . . . each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  § 2945.71(E).  Section 2945.72 lists instances in which the time limit for bringing an accused to trial may be tolled, including "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."  § 2945.72(H).  "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*."  *Brown*, 656 F.3d at 331.

Because AEDPA deference applies to a state appellate court's speedy trial analysis on federal habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir.2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir.2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

*Id*. at 332-333.

The Ohio Court of Appeals considered Pyles's speedy trial claim as follows:

{¶ 48} Ohio recognizes both a constitutional and a statutory right to a speedy trial. *State v. King*, 70 Ohio St.3d 158, 161, 637 N.E.2d 903 (1994); *see also* Sixth Amendment, United States Constitution; Section 10, Article I, Ohio Constitution. The Sixth Amendment of the U.S. Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy [trial]." This fundamental right has been codified by the General Assembly as R.C. 2945.71 to 2945.73. The Supreme Court of Ohio has found the statutory speedy-trial provisions set forth in R.C. 2945.71 to be

coextensive with constitutional speedy-trial provisions. *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987).

{¶ 49} R.C. 2945.71 provides the time-frame for a defendant's right to a speedy trial based on the level of offense. According to the Ohio Revised Code, "a person against whom a charge of felony is pending shall be brought to trial within two hundred seventy days after his arrest." R.C. 2945.71(C)(2). However, each day the defendant spends in jail in lieu of bail, solely on the pending criminal charge, counts as three days. R.C. 2945.71(E). *State v. Brown*, 64 Ohio St.3d 476, 479, 597 N.E.2d 97 (1992).

{¶ 50} Once the statutory limit for speedy trial has expired, the defendant has established a prima facie case for dismissal and the burden shifts to the State to demonstrate any tolling or extension of the time limit. *State v. Howard*, 7th Dist. No. 08 BE 6, 2009–Ohio–3251, ¶ 18, citing *State v. Price*, 122 Ohio App.3d 65, 68, 701 N.E.2d 41 (1997), citing *State v. Butcher*, 27 Ohio St.3d 28, 30–31, 500 N.E.2d 1368 (1996).

{¶ 51} R.C. 2945.72 provides a list of tolling events, relevant to this case are sections: (E) "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;" and (H) "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"  R.C. 2945.72(E), (H).

{¶ 52} When reviewing a speedy trial issue, this court must count the days of delay chargeable to either side and determine whether the case was tried within the time limits pursuant to R.C. 2945.71. *State v. Sanchez*, 110 Ohio St.3d 274, 2006–Ohio–4478, 853 N.E.2d 283, ¶ 8. Our review of a trial court's decision regarding a motion to dismiss for violation of the speedy trial provisions involves a mixed question of law and fact. *State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (1998). We give due deference to the trial court's findings of fact if they are supported by competent, credible evidence. *Id*. However, we independently determine whether the trial court properly applied the law to the facts of the case. *Id*. When reviewing the legal issues in a speedy trial claim, we must strictly construe the statutes against the State. *See Brecksville v. Cook*, 75 Ohio St .3d 53, 57, 661 N.E.2d 706 (1996); *Brown* at 391.

{¶ 53} Here, Pyles was jailed while awaiting trial and did not post bond; thus, the triple-count provision applies. Pyles was arrested on June 13, 2012; thus, June 14, 2012, is the first day of his speedy trial clock. *See State v. Hart*, 7th Dist. No. 06 CO 62, 2007–Ohio–3404, ¶ 11; *State v. Matland*, 7th Dist. No. 09 MA 115, 2010–Ohio–6585, ¶ 28.

{¶ 54} Pyles has made his prima facie case because 208 days elapsed between June 14, 2012, and January 7, 2013, the day trial commenced. However, the State alleges that numerous tolling events occurred which prevented the expiration of Pyles' speedy trial clock before the 90th day. The State is correct.

{¶ 55} June 14, 2012, is the first day of his speedy trial clock. The first tolling event occurred on June 21, 2012, when Pyles filed a motion for bail. *See, e.g., State v. Findley*, 7th Dist. No. 07 MA 53, 2008–Ohio–1549, ¶ 11 (motion for bond reduction tolls time

18

until trial court rules on motion.) Before the trial court could rule on the bond issue, Pyles filed several motions which also tolled the time. Namely, on June 26, 2012, he filed a motion for grand jury transcripts. In his motion for discharge, Pyles conceded that his speedy trial clock had tolled from this date until August, 30, 2012, when the trial court addressed the grand jury transcripts. Thus, as of August 30, 2012, it appears that, at most, only 7 days had run on Pyles' speedy trial clock.

{¶ 56} On August 6, 2012, the State and Pyles jointly moved to continue the trial that had been set that same day. The trial court's August 10 entry memorializing the joint continuance ruled that the speedy trial time was tolled. That entry did not specify a new trial date, though it reset the next pretrial for August 28, 2012,

{¶ 57} It is well settled that joint continuances toll a defendant's speedy trial clock. *See State v. Brown*, 7th Dist. No. 03 MA 32, 2005–Ohio–2939, ¶ 44, citing *State v. Davis*, 7th Dist. No. 98 CA 97 (Jun. 30, 1999). It seems the issue here then centers on how long the time is tolled as a result of a joint continuance where no new trial date is set in the entry. There do not appear to be any cases on point to this specific issue. However, as the State correctly argues, R.C. 2945.72(H) does not even require that a continuance granted upon the defendant's own motion or a joint motion be reasonable for the time period to be tolled. *See State v. Glass*, 10th Dist. No. 10AP–558, 2011–Ohio–6287, ¶ 16, citing *State v. Kist*, 173 Ohio App.3d 158, 163, 877 N.E.2d 747 (11th Dist.2007).

{¶ 58} Further, insofar as the trial here took place on January 7, 2013 and there were no other continuances on record after the August 6, 2012 joint continuance, this court can presume that trial was continued by joint motion of the parties until January 7, 2013. The fact that a new trial date was not set in the August 10th entry or any other entry does not affect the outcome; in fact, the local rules state that for criminal cases, "the Court Administrator shall be responsible for notification of all hearings and trials to all parties concerned * * *." Criminal Local Rule 11(C).

{¶ 59} During the time period where the trial had been continued by joint motion of the parties—specifically on November 29, 2012—Pyles filed a motion for discharge. This also tolled his speedy trial clock until January 4, 2013, when the trial court denied the motion.

{¶ 60} Pyles' trial commenced on January 7, 2013. Thus, at most, 10 days had run on his speedy trial clock. Accordingly, the trial court properly overruled the motion for discharge and Pyles' first assignment of error is meritless.

*State v. Pyles*, 2015 WL 9693891, at **7-9 (Oh. Ct. App. Dec. 30, 2015).

The Ohio Court of Appeals' consideration of R.C. § 2945.72(H) in calculating speedy

trial time is not contrary to federal law. *Brown*, 656 F.3d at 330-331 (holding that the Ohio

Court of Appeals' application of R.C. § 2945.72 is consistent with the speedy trial dictates in

*Barker*).  Nor was the Ohio Court of Appeals' calculation of Pyles's speedy trial time an objectively unreasonable application of federal law.  As the state Court of Appeals explained, Pyles and the state moved for a joint continuance on August 6, 2012.  The trial court granted the request and stated that the time was tolled against Pyles.  Concurrently, his time was tolled until August 30, the day that the trial court ruled on his pending motion for grand jury transcripts.  But the time against Pyles continued to toll, per the joint request on August 6.  Pyles filed a motion for discharge on November 29, which also tolled his speedy trial time.  The trial court ruled on Pyles's motion to discharge on January 4, 2013, and trial was held three days later, on January 7.

Pyles concedes that he filed, along with the state, a joint motion to continue trial on August 6, 2012.  Doc. 7, p. 31.  But he disagrees with the effect of the Ohio Court of Appeals' calculation of the time based on that joint motion.  The Ohio Court of Appeals considered the joint motion to be in effect until the trial date, January 7, 2013.  Pyles appears to argue that this interpretation is unreasonable because the docket does not reflect that the trial court ever rescheduled the trial date after granting the joint continuance requested on August 6.  Doc. 7, p. 31.  This argument fails.  The fact that a trial date was not set in a judgment entry does not describe a violation of speedy trial rights.  *See, e.g., State v. Smith*, 2004 WL 2588269, at *3 (Oh. Ct. App. Nov. 12, 2004) (rejecting the defendant's argument that his speedy trial time continued to run when trial was continued upon his motion and the trial court failed to journalize entries setting new trial dates).

Moreover, none of the four *Barker* factors weigh in Pyles's favor.  One, Pyles was tried seven months after he was indicted; thus, even without considering the delays attributable to him, this amount of time is not extraordinary.  *See, e.g., U.S. v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007) ("[N]either a ten- nor a twenty-month delay is extraordinary under our precedents[.]").  Two, the reason for delay was due primarily to Pyles's filings and sole or joint requests for

continuances.  Three, Pyles asserted his right to speedy trial once—on November 29, when he filed a motion for discharge—and the trial court ruled on his motion on January 4, the day after Pyles filed his reply brief and three days before trial.  *See* Doc. 5-1, p. 51.  Four, Pyles does not claim that he was prejudiced.  *Barker*, 407 U.S. at 530; *Brown*, 656 F.3d at 332.  In sum, the Ohio Court of Appeals' decision rejecting Pyles's argument that his speedy trial rights were violated was not unreasonable.  Therefore, Pyles's speedy trial claim fails on the merits.

### B. A portion of Ground 2 is procedurally defaulted and the remainder fails on the merits

In Ground 2, Pyles argues that there was insufficient evidence to convict him of rape with a person who was unable to consent due to a mental impairment and that the trial court erred when it denied his motion for acquittal.  Doc. 1, p. 8.  Specifically, Pyles contends that there is evidence showing that the victim "was not so limited in her ability to reason out her actions" and contends that her testimony at a prior hearing was contrary to her testimony at trial.  Doc. 1, p. 8.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the trier of fact's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial

evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence"). On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Coleman v. Johnson*, 566 U.S. 650 (2012). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered Pyles's sufficiency claim and his claim that his convictions were against the manifest weight of the evidence:

{¶ 62} A challenge to the sufficiency of the evidence tests whether the state has properly discharged its burden to produce competent, probative, evidence on each element of the offense charged." *State v. Petefish*, 7th Dist. No. 10 MA 78, 2011–Ohio–6367, ¶ 16. Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

{¶ 63} Conversely, "[w]eight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶ 64} Thus, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. However,

"[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002–Ohio–1152, *2, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Under these circumstances, the verdict is not against the manifest weight and should be affirmed.

{¶ 65} With regard to the rape conviction, R.C. 2907.02(A)(1)(c) states in part that no person shall engage in sexual conduct with another who is not the spouse of the offender * * * when:

> The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

{¶ 66} With regard to gross sexual imposition, R.C. 2907.05(A)(5) similarly provides in pertinent part:

> No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * the ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition.

{¶ 67} Pyles' sufficiency argument mainly centers on the substantial impairment element. He claims there was insufficient evidence presented to demonstrate that the victim's ability to resist or consent was substantially impaired because of a mental or physical condition, and/or that Pyles had reasonable cause to believe or had knowledge of O.H.'s impaired ability to resist or consent.

{¶ 68} Because the term "substantially impaired" is not defined in the Ohio Revised Code, the term "must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987). In order to establish substantial impairment, the State must demonstrate "a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *Id*. at 103–104. This court explained that " '[s]ubstantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." *State v. Hillock*, 7th Dist. No. 02–CA–538, 2002–Ohio–6897, at ¶ 21.

{¶ 69} For example, in *Hillock*, this court found that the State presented sufficient evidence that the victim was "substantially impaired" by her mental condition where the victim had an I.Q. of 64, which qualified as "mentally retarded," and the victim was 14 years old but functioned at a third-grade level. *Id*. at ¶ 22–25.

{¶ 70} Similarly, in *State v. Novak*, 11th Dist. No.2003–L–077, 2005–Ohio–563, ¶ 3, the Eleventh District concluded there was sufficient evidence that the victim's ability to consent was substantially impaired where the 32–year–old victim had been diagnosed with mild mental retardation, her I.Q. was tested at 59, she had very low adaptive behavior skills and was not capable of independent living and academically functioned at a first-to-third grade level. *Id*. at ¶ 3, 22. The court in *Novak* also considered the victim's very limited understanding of sexual relations and her diminished decision-making ability in deciding there was sufficient evidence of substantial impairment. *Id*. at ¶ 20–21.

{¶ 71} Here, Lapidus, O.H.'s therapist, testified that when O.H. was 19 years old, she had a full scale I.Q. of 58, and explained that O.H. was functioning at a second- or third-grade level, which required her to have a legal guardian; meaning she was not competent to sign papers or to make decisions for herself. Morton testified that she had been O.H.'s legal guardian since 2011, when O.H. was 21 years old and said that O.H. was "unable to take care of herself or protect herself." Lapidus stated that O.H. trusted Pyles "because she has compromised intellect and she looked to the Pastor for guidance and for support." Lapidus diagnosed O.H. with depressive disorder and mild mental retardation, and explained that her diagnoses affected her ability to say "no" to persons she trusted.

{¶ 72} White, O.H.'s special needs teacher in 2011, testified that O.H.'s mental retardation affected her judgment in making decisions.

{¶ 73} Both Pyles and his wife testified that O.H. looked to them as parental figures.

{¶ 74} There is more than sufficient evidence that O.H. was "substantially impaired" due to her mental condition and could not resist or consent due to that mental condition.

{¶ 75} With regard to manifest weight, the trial court had to weigh O.H.'s testimony that Pyles raped and improperly touched her, with Pyles' testimony that O.H. had fabricated the story. O.H.'s testimony was corroborated by the fact that she had disclosed the abuse to a teacher and then to Amendolea and to police, and via the fact that her trial testimony herein was consistent with what she had related previously to those witnesses. In addition, Pyles' preemptive statement to Lapidus that he did not have sex with O.H., before he was even accused of doing so, supports his guilt. Pyles also admitted that he was impotent, which corresponds with O.H.'s description of Pyles' penis as "mushy" and "soft".

{¶ 76} On the other hand, Pyles claims that the "bad secret" O.H. disclosed to her teacher actually related to her masturbation problem, for which he was supposedly "counseling" her. Buck did testify that she had caught O.H. masturbating during a slumber party, and Amendolea said Robinson had expressed concerns to her about O.H. masturbating in inappropriate areas of the home. There was also testimony from Buck and from Pyles'

wife that O.H. was inappropriately clingy with men. In addition, Pyles makes much of the fact that O.H. sometimes gave inconsistent responses during cross-examination; however, it appears she may have been confused by the nature of defense counsel's compound questions. On redirect, O.H. reaffirmed that Pyles had sexually abused her.

{¶ 77} Pyles also attempts to undermine O.H.'s credibility by pointing to the fact that she testified in an earlier CPO proceeding that Pyles never engaged in any inappropriate sexual behavior with her. However, during trial in the present case, O.H. testified that Pyles was in phone contact with her after she left Victory Harvest and that Pyles coached her about what to say.

{¶ 78} In the end, the trial court as fact-finder was in the best position to judge the credibility of the witnesses. Importantly, the trial court was able to observe O.H. in the courtroom and view her testimony, including her credibility and her intelligence deficits, and these are considerations that do not always shine through well from the "cold" record before us. *See, e.g., Novak, supra* at ¶ 23. Based upon the totality of the evidence, the fact-finder did not lose its way in convicting Pyles of rape and gross sexual imposition. Accordingly, Pyles' second assignment of error is meritless.

*Pyles*, 2015 WL 9693891, at **9-12.

### 1. Pyles's claim that there was insufficient evidence that the victim had a mental impairment is procedurally defaulted

In his brief on direct appeal to the Ohio Court of Appeals, Pyles argued two sub-claims under his insufficiency of the evidence claim: (1) that there was insufficient evidence to show that the victim had a substantial mental impairment, a requirement of the crimes Pyles was convicted of (Doc. 5-1, pp. 77-78); and (2) that there was insufficient evidence to show that "sexual conduct or contact even occurred" between himself and the victim (Doc. 5-1, p. 79).  In his memorandum in support of jurisdiction to the Ohio Supreme Court, Pyles only argued the second sub-claim, i.e., that there was insufficient evidence to show that any sexual conduct or contact ever occurred between himself and the victim.  Doc. 5-1, pp. 166-167.  He did not allege the first sub-claim, insufficient evidence that the victim had a substantial mental impairment.  In fact, in his memorandum to the Ohio Supreme Court Pyles repeatedly characterizes the victim as having a substantial mental impairment.  See Doc. 5-1, pp. 159, 161, 166.

25

Because Pyles did not present his first sub-claim to the Ohio Supreme Court, his first sub-claim is procedurally defaulted.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (finding that "raising the flag of procedural misconduct in state court" does not "preserve [the] right to press any particular allegations of misconduct in federal court," citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)).

Pyles submits that he was not required to include all of his arguments in his memorandum in support of jurisdiction to the Ohio Supreme Court because the memorandum is supposed to "bring forth the highlights of the case and state the constitutional issues that may interest the general public. It does not want argument in total for the reasons why the Appellant was prejudiced by the Court until the Merit brief is filed."  Doc. 7, p. 9.  The undersigned disagrees insofar as Pyles suggests that he was not required to present his legal and factual arguments to the Ohio Supreme Court in his memorandum in support of jurisdiction.  *See* S.Ct.Prac.R. 7.02(C) ("A memorandum in support of jurisdiction shall contain all of the following: .... A thorough explanation of why a substantial constitutional question is involved..."; "A statement of the case and facts"; and "A brief and concise argument in support of each proposition of law."); *Boddie v. Warden, Chillicothe Corr. Inst.*, 2015 WL 1757305, at *2 (S.D.Oh. April 17, 2015) (failure to raise issues in a memorandum in support of jurisdiction to the Ohio Supreme Court per S.Ct.Prac.R. 7.02 results in procedural default).

Pyles does not argue cause or prejudice to excuse the procedural default.  He does contend that "he is the victim of a manifest miscarriage of justice."  Doc. 7, pp. 27, 29.  In support of this assertion he reproduces portions of the trial transcript, which, he asserts, proves that the victim admitted that she had previously given inconsistent testimony regarding whether

Pyles had sexual relations with her.  Doc. 7, p. 28.  This testimony was presented at trial and is not new evidence of actual innocence, as required to show manifest injustice to overcome procedural default.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (to overcome a procedural bar based on a fundamental miscarriage of justice, a petitioner must produce new reliable evidence that was not presented at trial to support his allegations of constitutional error).[3]

Pyles procedurally defaulted the first sub-claim of Ground Two.

### 2. Pyles's claim that there was insufficient evidence that the rapes occurred fails on the merits

In his second sub-claim in Ground 2, Pyles argues that there was insufficient evidence presented at trial to show that the rapes occurred.  Doc. 1, p. 8; Doc. 7, p. 15.  In support of his claim, he argues that the victim gave prior inconsistent testimony at a Civil Protection Hearing about whether Pyles had sexual relations with her.  Doc. 7, p. 23.  But the Ohio Court of Appeals observed that the victim had testified at trial that Pyles had coached her about what to say at the Civil Protection Hearing.  See Doc. 5-1, p. 117.  The Ohio Court of Appeals detailed other evidence presented at trial that corroborated the victim's trial testimony: the victim had disclosed the sexual abuse to her teacher, her service support administrator from the Mahoning County Board of Mental Retardation and Developmental Disabilities, and the police, and her testimony at trial was consistent with what she had previously told them; Pyles had told the victim's therapist that he did not have sex with the victim before Pyles was even accused of having sex with the victim; and Pyles admitted that he was impotent, which corresponded with the victim's description of Pyles's penis as "mushy" and "soft."  Finally, the Ohio Court of Appeals commented that the trial court, as the factfinder in Pyles's bench trial, was in the best position to assess the witness's credibility.  *See Brown*, 567 F.3d at 205 (When considering a sufficiency of

---

[3]  Even if Pyles were to assert that the victim's testimony at a Civil Protection Hearing is "new evidence" showing manifest injustice, his claim would fail for the reasons discussed by the undersigned in the section regarding the second sub-claim of Ground Two, *supra*.

evidence claim, a court "does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.").  Pyles also argues that there was no physical evidence linking him with the victim (Doc. 7, p. 15), but circumstantial evidence alone is sufficient to support a conviction.  *See Johnson*, 200 F.3d at 992.

In sum, the Ohio Court of Appeals' determination was not unreasonable; "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319. Pyles's second sub-claim in Ground Two fails on the merits.

### C. Ground 3 is withdrawn

In Ground 3, Pyles argues that cumulative error with respect to evidentiary rulings occurred at trial, violating his right to a fair trial.  Doc. 1, p. 9.  In his Traverse, Pyles states that he "respectfully withdraws this Ground for Relief."  Doc. 7, p. 30.

### D. Ground 4 fails on the merits

In Ground 4, Pyles argues that he was denied his constitutional right to counsel due to errors that trial counsel made, including counsel's alleged failure to: seek preliminary rulings on the victim's competency, offer assistance to Pyles with respect to the decision to waive a jury trial, and to voir dire expert witnesses called by the state.  Doc. 1, p. 11.

The Ohio Court of Appeals considered this claim:

{¶ 105} In his fifth and final assignment of error, Pyles asserts:

Defendant-appellant was denied his constitutional guarantee of effective assistance of counsel.

{¶ 106} To establish ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The defendant bears the burden of proving counsel's alleged ineffectiveness, since Ohio law presumes a licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). If a defendant cannot show how counsel's errors undermined the reliability of the court's decision, there is no basis for finding that his right to counsel has been violated. *State v. Hancock*, 108 Ohio St.3d 57, 2006–Ohio–160, 840 N.E.2d 1032, ¶ 109; *Strickland* at 693.

{¶ 107} First, Pyles asserts defense counsel was ineffective because he failed to rebut the issue of O.H.'s competency. That choice did not rise to the level of deficient performance. As discussed, the State and the trial court questioned O.H. prior to her testimony and it was clear she understood right from wrong and was competent to testify.

*Pyles*, 2015 WL 9693891, at *16-17.  In its discussion of the victim's competency, the Ohio

Court of Appeals had explained earlier in its decision:

### Competency of O.H.

{¶ 83} Pyles first asserts that the trial court erred by determining O.H. was competent to testify. Pyles concedes that defense counsel failed to object to the trial court's determination during trial and therefore this issue is subject to plain error review.

{¶ 84} Evid.R. 601(A) states that "[e]very person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A).

{¶ 85} In *State v. Bradley*, 42 Ohio St.3d 136, 140, 538 N.E.2d 373 (1989), the Court held that "[a] person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind." *Id*. at 140–141, quoting *State v. Wildman*, 145 Ohio St. 379, 61 N.E.2d 790, paragraph three of the syllabus (1945).

{¶ 86} Further, in *State v. Sanders*, 8th Dist. No. 86405, 2006–Ohio–809, the Eighth District recognized that a witness who had been diagnosed with "mild mental retardation" likewise did not automatically render him incompetent to testify. *Id*. at ¶ 12. In *Sanders*, the court concluded that the trial court did not abuse its discretion in finding that the 40–year–old victim was competent to testify after he was able to articulate and answer nearly every question, and could distinguish between the truth and a lie. *Id*. at ¶ 13.

{¶ 87} Similarly, in *State v. Hardie*, 2d Dist. No. 19954, 2004–Ohio–6783, the court held that a developmentally disabled 15–year–old was competent to testify based on the following facts:

> [T]he trial court conducted a hearing on H.'s competency to testify at trial. In her interview with the judge in chambers, H. demonstrated that she could accurately recall and report basic facts, such as her name, age, address, and teachers' names. Additionally, H. was able to correctly identify two statements as truthful and two statements as lies. Moreover, H. demonstrated that she knew the importance of telling the truth and that she could be punished for telling a lie, specifically H. stated that if you lie you could go to foster care or jail. (Tr. 9). Additionally, H. stated that she could get someone in trouble if she lied and that would make her sad and upset. (Tr. 9–10).

*Hardie* at ¶ 13.

> {¶ 88} Here, O.H. was voir dired prior to her testimony and it was clear from her answers that she understood right from wrong. O.H. stated her name, age, date of birth, and her address. O.H. stated that she knew her parents' names, and knew what day of the week it was. O.H. stated that she knew why she was in court and had to testify. O.H. stated that she could not remember the specific day the alleged offenses occurred, but remembered that they took place in the church in North Jackson, and how long she lived there. O.H. was able to explain that someone who lies to a judge gets into trouble. O.H. then went through several examples demonstrating that she knew the difference between the truth and a lie.

> {¶ 89} Thus, the trial court did not err, let alone commit[] plain error, in determining that O.H. was competent to testify.

*Id.*, at *12-14.  Pyles does not challenge these findings by the Ohio Court of Appeals.  He merely reiterates that his trial counsel "offered no evidence nor sought any kind of preliminary ruling on [the victim's] competency" and criticized counsel for failing to ask questions at the competency hearing.  Doc. 7, p. 35.  He doesn't explain what sort of questions counsel should have asked. As the Ohio Court of Appeals observed, the victim was able to answer the questions she was asked and demonstrated that she knew the difference between the truth and a lie.  In short, the Ohio Court of Appeals' finding that the trial court did not err in determining that the victim was competent to testify was not unreasonable, nor was the Ohio Court of Appeals' further finding that trial counsel was not ineffective for failing to rebut the victim's competency.

The Ohio Court of Appeals' decision with respect to the remainder of Pyles's claims in Ground 4 continued as follows:

{¶ 108} Second, Pyles asserts counsel was ineffective for failing to offer expert testimony to rebut O.H.'s "substantial impairment." However, defense counsel did cross-examine O.H., along with the State witnesses who provided testimony about O.H.'s disability. "[C]ounsel's decision to rely on cross-examination instead of calling an expert witness does not constitute ineffective assistance." *State v. Mundt*, 115 Ohio St.3d 22, 2007–Ohio–4836, 873 N.E.2d 828, ¶ 118, citing *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993).

[] Third, Pyles asserts that "given the prior dealings between the trial court and the Defendant-appellant, he should have at least made a record showing that no bias was present." However, Pyles points to nothing in the record before us explaining the extent or nature of these "prior dealings." Thus, there is nothing to support the allegation that counsel was ineffective for failing to make a record of some alleged bias on the part of the court.

{¶ 109} Fourth, Pyles asserts that counsel was ineffective for failing to voir dire the State's witnesses, presumably as to their qualifications. However, there is nothing in the record suggesting that any of witnesses were unqualified to testify.

{¶ 110} Finally, Pyles contends trial counsel was ineffective for permitting him to waive his right to a jury trial. Ultimately, this decision was up to Pyles though, not counsel, and Pyles entered into a written waiver of his right to jury trial and the trial court questioned Pyles regarding waiver of his rights as required by R.C. 2945.05.

{¶ 111} "[A] defendant may not claim that he was denied effective assistance of counsel if: 'the record clearly demonstrates that appellant knowingly and voluntarily waived his right to a trial by jury, he signed the form in open court, which was duly filed and an extensive colloquy was conducted with the court sufficient to demonstrate his understanding of his rights and the waiver of the right to a trial by jury.' "*State v. Webb*, 10th Dist. No. 10AP–289, 2010–Ohio–6122, ¶ 71, citing *State v. Rippy*, 10th Dist. No. 08AP–248, 2008–Ohio–6680, ¶ 17. *See also State v. Silverman*, 10th Dist. No. 05AP–837, 2006–Ohio–3826 (defendant's signature on written jury waiver and verbal acknowledgment before trial court that he signed the jury waiver defeat ineffective assistance of counsel claim); *State v. Fazio*, 7th Dist. Belmont No. 93–B–10, 1994 WL 631654, *1 (Nov. 2, 1994) ("First, it is argued that waiving a jury trial prejudiced the appellant. The appellant herself waived her right to a jury. The waiver of a jury is not per se ineffective assistance of counsel.")

{¶ 112} Pyles has not proven that trial counsel was constitutionally ineffective, accordingly, his fifth assignment of error is meritless.

*Pyles*, 2015 WL 9693891, at *16-18.

The Ohio Court of Appeals' decision was not unreasonable.  To start, Pyles does not

explain why he believes that trial counsel should have offered "expert testimony of his own on

the issue of [the victim's] substantial impairment," let alone explain what an unidentified expert would have testified to.  The state Court of Appeals accurately stated that counsel's decision to rely on cross-examination instead of calling an expert witness does not constitute ineffective assistance.  *See, e.g., Harrington*, 562 U.S. at 107-109 (counsel's choice to forego an expert was sound trial strategy entitled to deference).

As for Pyles's claim of ineffective assistance based on counsel's failure to offer legal assistance when Pyles waived a jury trial before a judge who had demonstrated previous bias towards Pyles, the state Court of Appeals found nothing in the record to support Pyles's allegation of bias on the part of the court.  In his statement of facts in his Traverse, Pyles alleges that, sometime after 2005, his church was asked to house a recently released pedophile which resulted in an "uproar in the community" and "lawsuits being filed against the Church, and one being unsuccessfully prosecuted by a then local attorney and James C. Evans, who later became a Judge in Mahoning County Court of Common Pleas, and was assigned the instant underlying case in these proceedings."  Doc. 7, p. 5.  It is not clear from Pyles's assertion what role exactly he alleges that the trial court judge played in the alleged lawsuits previously filed against Pyles's church or further explain his purported allegation of bias.  He does not explain why he believes "counsel should have at least made a record, showing that no bias was present" (Doc. 7, p. 35) and how the failure to make a record showing no bias was ineffective assistance and prejudiced Pyles, as required under *Strickland*.  Moreover, as the Ohio Court of Appeals explained, Pyles, not counsel, waived the right to a jury trial in accordance with Ohio law.  The Ohio Court of Appeals' finding that Pyles did not show that his attorney was ineffective because Pyles waived a jury trial was not unreasonable.

Pyles's last claim, that trial counsel was ineffective for failing to voir dire the state's expert witnesses, fares no better.  Pyles does not identity what purpose would have been served

had counsel challenged the experts' qualifications.  It cannot be said that the Ohio Court of Appeals' determination that nothing in the record suggested that any of witnesses were unqualified to testify was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.  *See, e.g.*, *Bowers v. Michigan*, 2017 WL 1531958, at *3 (6th Cir. Apr. 28, 2017) (finding that the state court's determination that the record was devoid of evidence showing that the expert witness was unqualified when denying the petitioner's ineffective assistance of counsel claim was not unreasonable).

The Ohio Court of Appeals applied the *Strickland* standard to Pyles's ineffective assistance of counsel claims and its conclusions were not unreasonable.  Ground 4 fails on the merits.

### E. Motion to Expand the Record

Pyles filed a Motion to Expand the Record (Doc. 8), seeking to include the transcript from the Civil Protection Hearing that was held in April 2011, prior to his trial, and documents that he claims are the victim's school records and assessments of the victim by school officials. Alleged copies of the transcript and documents were attached to the Motion to Expand the Record.

Rule 7(a) of the Rules Governing Section 2254 Cases permits a habeas petitioner to supplement the record with any documents "relevant to the determination of the merits of the petition."  Expansion of the record in habeas cases "is not mandatory ... and is left to the discretion of the trial judge."  *Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008) (quoting *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988)).  However, when a claim has been adjudicated on the merits by the state court, a federal habeas court is limited to the record that was before the

state court that adjudicated the claim.  *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (discussing § 2254(d)(1)); *Moore v. Mitchell*, 708 F.3d 760, 780 (6th Cir. 2013).

Because the Ohio Court of Appeals adjudicated Pyles's claims on the merits, this Court is limited to the record that was before the Ohio Court of Appeals.  *Id.*  Pyles concedes that the state trial court did not admit the Civil Protection Hearing transcript into evidence.  *See* Doc. 1, p. 9 (Ground Three of Pyles's Petition, wherein he complains that the trial court erred by not admitting the Civil Protection Hearing transcript into evidence); *see also Pyles*, 2015 WL 9693891, at *15-16 (rejecting, on the merits, Pyles's argument that the trial court erred by not admitting the Civil Protection Hearing transcript into evidence).  Pyles also admits that the Civil Protection Order transcript was not included in the record reviewed by the Ohio Court of Appeals.  Doc. 8, p. 2.  Thus, the Court cannot consider the Civil Protection Hearing transcript submitted by Pyles with his motion.  *Pinholster*, 563 U.S. at 185.  In any event, counsel did cross examine the victim using the transcript and that cross examination is part of the record and was considered by the Ohio Court of Appeals.

As for the victim's purported school records (unauthenticated and dated four years prior to Pyles's trial), Pyles asserts that the "critical nature of these documents show the actual innocence of the Petitioner and take away all speculation of guilt on his part."  Doc. 8, p. 3. First, Pyles does not allege that these documents were part of the state court record and the undersigned finds no mention of them by the Ohio Court of Appeals.  Thus, under *Pinholster*, the Court may not consider these documents.  Moreover, the victim's purported school records do not show that Pyles is actually innocent of gross sexual imposition and rape.

Pyles's motion to expand the record is denied.

**IV**. **Conclusion and Recommendation**

For the reasons stated above, the undersigned recommends that Pyles's habeas Petition be

**DISMISSED** in part and **DENIED** in part because a portion of Ground 1 is not cognizable and

the remainder fails on the merits; a portion of Ground 2 is procedurally defaulted and the

remainder fails on the merits; Ground 3 is withdrawn; and Ground 4 fails on the merits.  Pyles's

Motion to Expand the Record (Doc. 8) is **DENIED**.


Dated: August 15, 2017

_____

Kathleen B. Burke
United States Magistrate Judge


**<u>OBJECTIONS</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).